UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| KEELLY A. P.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-cv-00422-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Keelly A. P. filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). Plaintiff challenges the ALJ's decision finding that she was not disabled. *Id.*

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason the ALJ did not rely on; only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## I. DISCUSSION

The Court begins by summarizing the ALJ's sequential process analysis. Plaintiff's disability application alleged that she suffered from multiple sclerosis, chronic migraines, fibromyalgia, vertigo, deafness, arthritis, narcolepsy, and sleep problems limiting her ability to work. AR 280. The ALJ found that Plaintiff had the following severe impairments: multiple sclerosis; fibromyalgia; hearing loss in the right ear; and obesity. AR 20. However, the ALJ found that none of these impairments, singly or in combination, met or equaled a listing impairment. AR 24. The ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations. AR 25. Then, the ALJ found that Plaintiff could perform some of her past relevant work. AR 36. Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and denied her application for benefits. AR 37-38.

Plaintiff brings two arguments on this appeal: (i) the ALJ erred by failing to properly evaluate the medical opinions in her record, and (ii) the ALJ erred in analyzing her subjective symptom reports. Pl.'s Br. at 4 (Dkt. 13). The Court addresses each argument in turn.

**A. Medical Opinions**

Plaintiff first argues that the ALJ improperly rejected multiple medical opinions that detailed her physical and mental limitations. Pl.'s Br. at 14-15 (Dkt. 13). In doing so, Plaintiff argues the ALJ erroneously substituted her lay opinion for those of medical providers. *Id.* at 15. Defendant argues that the ALJ's analysis of the medical opinions was supported by substantial evidence and should be upheld. Def.'s Br. at 8 (Dkt. 17). The Court agrees with Defendant.

***1. Legal Standard***

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, an ALJ must evaluate the "persuasiveness" of medical opinions based on several factors. *Id.* These

are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 416.920c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ must explain how both were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

***2. Analysis***

Plaintiff raises numerous arguments with respect to the ALJ's evaluation of medical opinions. The Court notes that Plaintiff's briefing undermines her case on appeal. Plaintiff raises numerous objections to the ALJ's analysis of these opinions, devoting only a few cursory sentences to each objection. This "shotgun" approach is unhelpful. Plaintiff does not specifically anchor her arguments to either the substantial evidence standard or the two requisite

pillars of an ALJ's medical opinion analysis: supportability and consistency. *Woods*, 32 F.4th at 792. In particular, she does not explain how her asserted errors establish that these two fundamental elements of an ALJ's medical opinion analysis are unsupported by substantial evidence. Accordingly, Plaintiff has not framed her briefing in light of the standards this court must apply in its review of Social Security decisions.

As Plaintiff's brief notes at the outset, the crux of her argument on appeal is that the ALJ "failed to adequately assess the medical opinions for supportability and consistency." Pl.'s Br. at 4 (Dkt. 13). Thus, the Court organizes and addresses Plaintiff's arguments by discussing each medical opinion raised in Plaintiff's brief and explaining why the ALJ's supportability and consistency analyses were adequate as to each. *Woods*, 32 F.4th at 792. Because this analysis provides substantial evidence to affirm the ALJ's decision, the Court need not address Plaintiff's particular arguments as to each opinion in detail. *Revels*, 874 F.3d at 654.

*a. Mental impairment opinions*

Plaintiff argues that the ALJ erred in evaluating three medical opinions concerning her mental impairments. Plaintiff argues that the ALJ improperly rejected the psychological opinion of Dr. Brad Levitt. Pl.'s Br. at 8 (Dkt. 13). Relatedly, Plaintiff argues that the ALJ improperly rejected the opinions of two other consultative examiners – Dr. Mack Stephenson and Dr. J. Michael Dennis – that relied in part on Dr. Levitt's report. *Id.* at 9-10.

Dr. Brad Levitt, Psy.D, performed psychological consultative evaluations of Plaintiff on March 31, 2023, and August 18, 2023. AR 633-38, 754-59. In his March opinion, Dr. Levitt stated that Plaintiff's "sometimes depressed and irritable mood, in combination with recently reported memory and information processing difficulties, are likely to have a negative impact upon her ability to sustain work efforts over time." AR 31. Dr. Levitt opined that Plaintiff

suffered from a range of mental limitations. He stated she was limited in processing abstract information requiring more complex thinking; had a mildly to moderately impaired ability to carry out simple instructions; a moderately to markedly impaired ability to carry out complex instructions; a marked impairment in maintaining concentration and pace; a moderate impairment in maintaining effective social interaction; and a marked impairment in dealing with normal pressures in a competitive work setting. *Id.* Dr. Levitt's second examination in August led to no change in his mental status findings, and he drew the same conclusions from it. AR 32.

The ALJ found both of Dr. Levitt's opinions unpersuasive. AR 32. The ALJ noted that the opinion was "based on a one-time exam without any review of her records and is inconsistent with Dr. Levitt's own objective findings, as discussed in detail at Finding 3 of this decision. The claimant did not report her craft show activities to Dr. Levitt, and he relied heavily on her subjective report of symptoms." AR 31. The ALJ also fund that the opinion was not consistent with "the clinical findings of Dr. Ireland or… Dr. Starr." AR 32.

Dr. Mack Stephenson, a non-examining state agency psychologist, evaluated Plaintiff's case at the initial level on April 5, 2023. He found Plaintiff had moderate limitations in understanding, remembering, or applying information; concentrating, persisting and maintaining pace, and adapting and managing oneself. AR 32. He also found Plaintiff had a mild limitation in interacting with others. *Id.*

The ALJ deemed Dr. Stephenson's opinion unpersuasive, because it "relie[d] on Dr. Levitt's exam to the exclusion of contradictory exam findings and activities." AR 32. Specifically, the ALJ noted that Dr. Levitt's report was contradicted by normal cognitive findings, Plaintiff's declining to discuss her depression with her primary care physician, and Plaintiff's reported activities. *Id.* The ALJ also noted that Dr. Levitt had based his opinion on a

single examination, had relied heavily on Plaintiff's own reports and had not reviewed her medical records, and had conducted limited cognitive evaluations. *Id.*

Dr. J. Michael Dennis, a non-examining state agency psychologist, evaluated Plaintiff's case on reconsideration on August 29, 2023. He found that Plaintiff generally had moderate mental limitations. AR 102. He then concluded that Plaintiff retained the capacity to perform at least simple, repetitive tasks with limited social interaction. AR 101.

The ALJ found Dr. Dennis's opinion unpersuasive "for the reasons explained in the evaluation of Dr. Stephenson's opinion." AR 33. Further, the ALJ noted "Dr. Dennis also clearly did not see or evaluate the claimant's physical therapy records, her craft show activities or the other medical records that do not support Dr. Levitt's findings or conclusions. As discussed above, Dr. Levitt did not review the claimant's other medical records, which show normal cognitive findings." *Id.*

The ALJ adequately analyzed the supportability and consistency of Dr. Levitt's opinion. With respect to supportability, the ALJ noted that numerous factors undermined Dr. Levitt's opinion: it was based on a single examination and Plaintiff's own subjective reports of her symptoms; did not account for her craft show activities; and conflicted with Dr. Levitt's own objective findings as detailed in his records. AR 31. These grounds reasonably undermined the foundation on which Dr. Levitt's opinion rested. In particular, the ALJ noted that Dr. Levitt's opinion was inconsistent with his own objective findings, and explained his reasoning in detail elsewhere. AR 21; 20 C.F.R. § 404.1520c(c)(1) (explaining that the persuasiveness of an opinion depends on its relevant objective medical evidence). Plaintiff does not contest this portion of the ALJ's supportability analysis. *See generally* Pl.'s Br. at 8-9 (Dkt. 13). Accordingly, it provides sufficient grounds to affirm the decision here.

Then, with respect to consistency, the ALJ noted that the opinion was inconsistent with the finding of Dr. Ireland and Dr. Starr. AR 32. Plaintiff does not challenge the ALJ's consistency analysis with respect to Dr. Levitt's opinion. Pl.'s Br. at 8-9 (Dkt. 13). Thus, the ALJ did not err in evaluating Dr. Levitt's opinion.

The ALJ also sufficiently analyzed the supportability and consistency of Dr. Stephenson's opinion. With respect to supportability, the ALJ noted that Dr. Stephenson's opinion was based on Dr. Levitt's examination findings, which were unsupported for the reasons explained above. AR 32. Because Dr. Stephenson had "relie[d] on Dr. Levitt's exam to the exclusion of contradictory exam findings and activities, his opinion [was] unpersuasive." *Id.* That lack of evidentiary foundation adequately undermined the supportability of Dr. Levitt's, and thus Dr. Stephenson's opinion, notwithstanding the degree of testing performed by Dr. Levitt. *See* Pl.'s Br. at 9 (Dkt. 13). As to consistency, the ALJ noted that the "overall record" was inconsistent with these findings. *Id.* The ALJ specifically cited inconsistencies between Dr. Levitt's report and reports by other medical professionals. AR 21. A reasonable mind can follow the ALJ's conclusions here; thus, the ALJ did not err in analyzing this opinion.

Finally, the ALJ adequately analyzed Dr. Dennis's opinion. With respect to supportability, the ALJ noted that Dr. Dennis's opinion was not adequately supported because he (i) had not had the opportunity to review the entirety of Plaintiff's medical records, and (ii) had relied on Dr. Stephenson's (and thus Dr. Levitt's) unpersuasive findings. AR 33. Although Plaintiff contests point (i), the ALJ's reference to Dr. Dennis's reliance on Dr. Stephenson's and Dr. Levitt's opinions provides adequate grounds to uphold the ALJ's supportability analysis. With respect to consistency, the ALJ stated that Dr. Dennis "clearly did not see or evaluate the claimant's physical therapy records, her craft show activities or the other medical records that do

not support Dr. Levitt's findings or conclusions." *Id.* Notwithstanding Plaintiff's note that Dr. Dennis referenced "the rest of the medical evidence in the file," AR 105, the ALJ also independently and validly noted that Dr. Dennis's findings were inconsistent with her daily activities. The ALJ did not err in analyzing Dr. Dennis's opinion.

Accordingly, the ALJ did not err in evaluating the medical opinions as to Plaintiff's mental impairments.

*b. Physical impairment opinions*

Plaintiff also asserts that the ALJ erred in evaluating three medical opinions concerning her physical impairments. Specifically, Plaintiff argues the ALJ improperly discredited the opinions of Dr. Stephen Ireland and Dr. John Starr. Pl.'s Br. at 10-12. She also argues the ALJ failed to construe these opinions in light of her fibromyalgia and multiple sclerosis. *Id.* at 12-13. Finally, Plaintiff argues the ALJ improperly rejected the opinion of Plaintiff's audiologist, Michael Bateman.

Dr. Ireland, Plaintiff's treating neurologist, provided a medical source statement as to Plaintiff's condition on May 2, 2024. AR 1417-21. He opined that Plaintiff was capable of "low stress" work, but would likely miss more than four days of work per month due to her impairments. AR 1420. He declined to answer questions about Plaintiff's functional limitations because he had not performed a physical capacities evaluation. AR 1418. Instead, he recounted Plaintiff's fibromyalgia and multiple sclerosis diagnoses, and noted that she suffered symptoms including headaches, fatigue, cognitive impairment, hearing loss, and incoordination. AR 1417.

The ALJ found the opinion unpersuasive, noting that "the symptoms cited by Dr. Ireland are not documented in his progress notes or in the remainder of the medical evidence." AR 35. Instead, the ALJ found that those progress notes "show normal physical and cognitive

finding suggesting asymptomatic multiple sclerosis and fibromyalgia." *Id.* The ALJ also noted that Dr. Ireland's opinion that Plaintiff would miss more than four days of work per month conflicted with Plaintiff's reported activities, particularly her participation in craft shows. *Id.*

Next, Dr. John Starr, Plaintiff's primary care physician, completed a medical source statement on April 2, 2024. AR 1400-04. Among other findings, Dr. Starr found that Plaintiff could do only low stress work and would miss more than four days of work per month. AR 1403. He also stated that Plaintiff suffered from chronic pain, migratory arthritis, fatigue, confusion, and decreased hearing, and identified clinical findings of weakness and fatigue. AR 1400. Finally, Dr. Starr opined that Plaintiff suffered from a range of physical limitations that would impact her work. AR 1401-03.

The ALJ rejected Dr. Starr's opinion as unpersuasive. The ALJ noted that Dr. Starr "completed this statement with the assistance of the claimant and the symptoms cited in his report are not supported by the claimant's extensive medical records, particularly those of her treating neurologist, Dr. Ireland." AR 33. The ALJ concluded that Dr. Starr's opined limitations were not supported by the objective medical evidence, Plaintiff's daily activities, or Dr. Starr's own notes. Thus, the ALJ concluded that "the overall record is not supportive of [Dr. Starr's] findings." AR 34.

Finally, the ALJ considered a medical source statement completed by Michael Bateman, Au.D., Plaintiff's audiologist. AR 34-35, 1410-16. Dr. Bateman stated that Plaintiff suffered from sensorineural hearing loss in the right ear, resulting in profound hearing loss and a significant decrease in speech understanding on her right side. AR 1410. Dr. Bateman further stated that Plaintiff would "struggle to hear in any noisy environment" and "would not be able to understand speech" at a distance. AR 1414. He also stated that Plaintiff would be limited in her

ability to interact with others due to "auditory fatigue due to continued struggle hearing conversation speech." AR 1415. Accordingly, Dr. Bateman recommended Plaintiff work in a "quiet work environment with low auditory stress. Non-critical work. Better auditory positioning in the work environment. Bluetooth system to help stream work calls." AR 1416.

The ALJ found that Dr. Bateman's opined restrictions were "not well supported by the medical and other evidence." AR 35. In particular, the ALJ noted that Plaintiff had stated that some of her prior difficulty with hearing others was due to mask usage. *Id.* Further, the ALJ pointed to Plaintiff's reported daily activities – including daily conversations on the phone, attendance family barbecues, and craft fairs – as inconsistent with the restrictions. *Id.* Thus, the ALJ found that while Plaintiff could "tolerate only occasional exposure to loud noise at a level 4, the other restrictions posited by Mr. Bateman are not supported by the record." *Id.*

The ALJ validly analyzed the supportability and consistency of Dr. Ireland's and Dr. Starr's opinions by looking to their treatment notes. *See* 20 C.F.R. §§ 404.1520c(c)(1) & (2) (explaining that medical evidence and supporting explanations are relevant to a medical source's persuasiveness determination). Here, the ALJ noted how Dr. Ireland and Dr. Starr each stated that Plaintiff suffered from symptoms that were not substantiated in their notes or in Plaintiff's record. For example, the ALJ found Dr. Ireland's progress notes, because they showed "normal physical and cognitive finding suggesting asymptomatic multiple sclerosis and fibromyalgia," did not support the symptoms his opinion cited. AR 35. Similarly, the ALJ found that Dr. Starr's notes at the time of his opinion reflected "no changes" from earlier visits, where Dr. Starr had made generally normal findings. AR 33-34. The ALJ also found that Dr. Starr's findings conflicted with Dr. Ireland's treatment notes. AR 34. Thus, the ALJ validly used the doctors' own notes as part of her supportability analysis, and contrasted the two sources' notes as part of

her consistency analysis. 20 C.F.R. §§ 404.1520c(c)(1) & (2). Further, a reasonable mind can follow the conclusion that the generally normal findings within Plaintiff's record did not support the doctors' opined symptoms. *Biestek*, 139 S. Ct. at 1154. Plaintiff's arguments here do not undermine this conclusion, but instead simply propose alternate readings of the record that the Court does not consider on appeal. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, (9th Cir. 2004). Thus, the ALJ provided substantial evidence to discount Dr. Ireland's and Dr. Starr's opinions by using their treatment notes to analyzing those opinions' supportability and consistency.[1 2]

Finally, the ALJ adequately evaluated the supportability and consistency of Dr. Bateman's opinion. With respect to supportability, the ALJ noted that Mr. Bateman had not completed testing related to certain hearing issues. AR 34. Then, with respect to consistency, the ALJ noted that Dr. Bateman's proposed restrictions were "not well supported by the medical and other evidence," particularly Plaintiff's 100% hearing in one ear and record of daily activities. AR 35. However, a reasonable mind can follow the ALJ's conclusion that Dr.

---

[1] The ALJ did not commit legal error by failing to construe Plaintiff's fibromyalgia in light of its unique characteristics. In the Ninth Circuit, a plaintiff's allegations of fibromyalgia symptoms receive a specialized review based on the disease's unique characteristics. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). However, that body of law applies to an ALJ's review of a claimant's subjective symptom allegations – not an ALJ's medical opinion analysis. *Id.*; *see also* SSR 12-2P. Plaintiff does not challenge the ALJ's subjective symptoms analysis of her fibromyalgia. Nor does Plaintiff detail what the ALJ should have done when evaluating the supportability and consistency of Dr. Ireland's and Dr. Starr's opinion besides looking to those doctors' notes, Plaintiff's record, and Plaintiff's daily activities. Accordingly, the Court finds that remand is not warranted with respect to this argument.

[2] Nor did the ALJ err in evaluating Plaintiff's multiple sclerosis. Contrary to Plaintiff's arguments, the ALJ did not find that her multiple sclerosis was "stable," and thus infer that she would not suffer work-preclusive symptoms from it. Pl.'s Br. at 13 (Dkt. 13). the ALJ elsewhere found that Dr. Ireland's progress notes suggested "asymptomatic" multiple sclerosis. AR 35. In particular, the ALJ noted that despite Plaintiff's diagnosis, exam findings had been "normal," that she had "no new neurological symptoms," and that Dr. Ireland stated that he did not believe Plaintiff had suffered any relapses and was stable, in part due to medication. AR 27-28. Then, in noting that Plaintiff's MRIs showed "no progression of her multiple sclerosis," the ALJ formulated an RFC that limited Plaintiff to light work. *Id.* Thus, the ALJ's analysis of the medical opinions and her resulting RFC adequately engaged with Plaintiff's record in this respect.

Bateman's opinion that Plaintiff required a "quiet work environment with low auditory stress," and would suffer "auditory overload creating auditory fatigue due to continued struggle hearing conversational speech," was contradicted by Plaintiff's personal phone use, conversations without any difficulty hearing, and work at craft shows. A reasonable mind can also follow the ALJ's conclusion that Plaintiff's participation in the auditory environment of a craft show showed she was not as limited in her hearing as Dr. Bateman opined. Accordingly, the ALJ did not err in evaluating Dr. Bateman's opinion.

In sum, the ALJ properly analyzed the supportability and consistency of each of the opinions that Plaintiff challenges, and properly discharged her duty to translate persuasive evidence into an RFC. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) (an ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC."). While the ALJ discounted some opinions for inconsistency with Plaintiff's record and lack of support, the ALJ also partially credited some opinions and incorporated their opined limitations into Plaintiff's RFC. *See, e.g.*, AR 30 (accepting Dr. Vestal's and Dr. Codrum's opinions as persuasive); AR 35 (accepting Dr. Bateman's restriction of only occasional exposure to loud noise). Thus, the ALJ's RFC was adequately based on these opinions and the record as a whole.

The Court reiterates that many of Plaintiff's arguments boil down to objections that the ALJ did not credit certain aspects of the record or interpret them in the manner Plaintiff would have liked. However, Plaintiff's desired interpretation of the medical opinions is not at issue. *Batson*, 359 F.3d at 1193. Because substantial evidence exists to support the ALJ's interpretation of the medical opinions, the undersigned properly defers to that interpretation.

In conclusion, substantial evidence supports the ALJ's evaluation of the medical opinions. Remand is not warranted on this ground.

**B. Subjective Symptoms**

Plaintiff next argues that the ALJ erred in evaluating her subjective symptoms. Plaintiff takes issue with the ALJ's use of her daily activities – namely, her crafting – to discount her subjective allegations that she struggled to sit, stand, and walk. Pl.'s Br. at 17 (Dkt. 13). Plaintiff also disagrees with the fact that the ALJ discredited her subjective allegations of depression by noting that Plaintiff declined to take an antidepressant. *Id.* at 18. Finally, Plaintiff contests the ALJ's rejection of her claimed issues with "short term response" for lack of record support. *Id.* at 19. In response, Defendant argues that the ALJ provided clear and convincing reasons to reject each of the subjective symptoms raised by Plaintiff. Def.'s Br. at 9 (Dkt. 17). The Court agrees with Defendant.

***1. Legal Standard***

An ALJ must analyze a claimant's subjective symptoms in two steps. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony …." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).

An ALJ is best positioned to make credibility determinations, and their determinations are entitled to great weight. *Reddick*, 157 F.3d at 722. The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p. Inadequate or inconsistent objective medical evidence may be used to discount a claimant's testimony. *Smartt*, 53 F.4th at 498. Similarly, daily activities that are inconsistent with a claimant's symptom allegations are also valid grounds to discount that testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

***2. Analysis***

The Court addresses each of Plaintiff's three subjective symptom arguments regarding: (i) the ALJ's use of Plaintiff's crafting; (ii) the ALJ's note that Plaintiff declined to take an antidepressant; and (iii) the ALJ's rejection of Plaintiff's difficulties with short term response.

First, the ALJ validly rejected Plaintiff's alleged physical limitations as inconsistent with her daily activities. Plaintiff alleged that she was unable to sit, stand, or walk for more than fifteen to twenty minutes. AR 28. The ALJ found this allegation inconsistent with Plaintiff's daily activities, noting that Plaintiff participated in crafting shows "every weekend," and occasionally "back-to-back." *Id.* The ALJ noted that Plaintiff stated she was on her feet for long

periods during the shows. *Id.* The ALJ validly looked to Plaintiff's daily activities to discount her testimony. *Ghanim*, 763 F.3d at 1165. Further, Plaintiff's participation in craft shows – which involved standing for "long periods" – specifically conflicted with Plaintiff's allegations that she could not stand for more than 20 minutes. Plaintiff's related arguments about her craft fair participation are unavailing. While Plaintiff's physical therapy records may reflect that her participation at craft fairs increased her pain, that does not change the issue here: despite her pain and soreness, Plaintiff remained able to stand for more than 20 minutes.

Next, the ALJ validly rejected Plaintiff's alleged brain fog based on her course of treatment and daily activities. The ALJ noted that, despite this allegation, Plaintiff "declined to take an anti-depressant." AR 29. Plaintiff argues this analysis is not "clear and convincing" because it does not address how an anti-depressant would alleviate brain fog. Pl.'s Br. at 18. However, the ALJ provided additional reasons for rejecting this symptom. The ALJ noted that Plaintiff "participates in craft shows, an activity that involves planning, making items, and during the selling season, setting up, talking to customers about products, standing for long hours and selling." *Id.* The ALJ also noted that Plaintiff took Modafinil for her fatigue and received a "good response" from it. *Id.*; *see also* AR 24. Plaintiff's brief does not directly address either of these points. Pl.'s Br. at 16-19. Plaintiff does argue that the ALJ's description of the craft show "relies on her experience with craft shows rather than what was supported by the record . . . there was no description of the size of the market or venue where the market was held." *Id.* at 16. However, Plaintiff does not explain how venue or market size would change the ALJ's assessment that the craft fairs involved planning, execution, and interactions inconsistent with debilitating brain fog. Thus, the ALJ's citation to Plaintiff's daily activities, in combination with her course of medication, specifically contradicted the severity of this alleged symptom.

Last, the ALJ validly rejected Plaintiff's allegations of "short term response issues" for lack of record support. Plaintiff reported struggling at her last job with "short term, immediate responses." AR 26. The ALJ discounted her reported symptoms, noting that she had "no significant mental complaints until she lost her job." AR 29. The ALJ also noted that Plaintiff's mental status exams reported only "mild deficits" in understanding remembering, and carrying out instructions and in concentrating, persisting, and maintaining pace. AR 29. The ALJ also noted that Plaintiff was able to perform mental tests without errors. *Id.* Plaintiff argues that it is "not surprising" that Plaintiff had no significant mental complaints given that she "did not allege cognitive issues in her initial application." Pl.'s Br. at 19. Nevertheless, the absence of supporting complaints remains, and the ALJ's point remains valid. That point, in combination with Plaintiff's mental status examinations (uncontested by Plaintiff) specifically contradict Plaintiff's reported difficulty with immediate responses.

In sum, the ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptoms. Remand is not warranted on this issue.

## II. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, that Plaintiff's Complaint for Review of a Social Security (Dkt. 1) is DENIED, and this action is DISMISSED in its entirety, with prejudice.

DATED: August 13, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge